Slip Op. 15- 146

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE JANKOVICH COMPANY<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant. | Before: Jane A. Restani, Judge<br><br>Court No. 15-00208 |

## OPINION

[Defendant's motion to dismiss is granted.]

Dated: December 30, 2015

Frank X. Dipolito, Swain & Dipolito LLP, of Long Beach, CA, for plaintiff.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief were Andrew K. Lieberman and Marc Matthews, Senior Attorneys, Office of Chief Counsel, Trade and Finance, U.S. Customs and Border Protection, of Washington, DC.

Restani, Judge: This matter is before the court on defendant United States' ("the

government") motion to dismiss the complaint filed by the Jankovich Company ("Jankovich"),

for lack of subject-matter jurisdiction pursuant to U.S. Court of International Trade Rule

12(b)(1). Jankovich could have brought its claims under 28 U.S.C. § 1581(a), but failed to

perfect jurisdiction under that section by filing a proper protest. Because jurisdiction was

potentially available under § 1581(a), the court does not have jurisdiction under § 1581(i), and grants the government's motion.

## BACKGROUND

Jankovich distributes bunker fuel between the ports of Los Angeles and San Diego. Compl. ¶¶ 3–4, ECF No. 4.  The bunker fuel is used "for the propulsion and operation of vessels."  Id.  Jankovich has been paying Harbor Maintenance Fees ("HMFs") to U.S. Customs and Border Protection ("CBP") on a quarterly basis since 2008 based on the value of the bunker fuel.  Id. ¶ 5, Ex. A.  The HMF is a port use fee assessed at 0.125% of the value of commercial cargo shipped through certain identified ports.  19 C.F.R. § 24.24(a) (2015).

On November, 20, 2009, Jankovich sought a ruling from CBP that its bunker fuel shipments were not subject to the HMF.  See HQ H086062 (Mar. 12, 2010), available at 2010 WL 1267976.  On March 12, 2010, CBP determined that the shipments were subject to the HMF. Id.  On January 24, 2014, Jankovich submitted a request for reconsideration.  HQ H250175 (May 19, 2014), available at 2014 WL 2683944.  On May 19, 2014, CBP denied the request for reconsideration and affirmed HQ H086062.  Id.  On October 14, 2014, Jankovich again requested reconsideration, which CBP denied on November 18, 2014, based on 19 U.S.C. § 1625.  Decl. of Frank X. Dipolito Re: Def.'s Mot. to Dismiss Ex. D ("Dipolito Decl.").  On July 31, 2015, Jankovich filed a two-count complaint seeking refund of HMF payments, plus interest, and a declaration that its bunker fuel is not subject to the HMF.  Compl. ¶¶ 13–21. Jankovich claims, under the plain meaning of 26 U.S.C. §§ 4461, 4462 and 19 C.F.R. §§ 24.24(a), (c), that its bunker fuel is not "commercial cargo" and is specifically exempted from the HMF.  Id. ¶¶ 6–12.  The complaint asserts jurisdiction under 28 U.S.C. § 1581(i).  Id. ¶ 1.

In moving to dismiss the complaint, the government argues that the court does not have jurisdiction.  The government asserts that the court lacks jurisdiction under 28 U.S.C. § 1581(i) because relief was available under § 1581(a), and lacks jurisdiction under 29 U.S.C. § 1581(a) because Jankovich failed to perfect jurisdiction by filing a protest.  Def.'s Mot. to Dismiss & Mem. in Supp. of its Mot. to Dismiss 4, ECF No. 9 ("Gov. Br.").   The government also argues that even assuming the court could exercise subject-matter jurisdiction under § 1581(i), Jankovich's refund claims for payments made before July 31, 2013, are time-barred by § 1581(i)'s two-year statute of limitations.  Id. at 5–6.

 Jankovich responds that as a challenge to a CBP "prospective" ruling, its complaint falls properly within § 1581(i) jurisdiction.  Jankovich Co.'s Opp'n to Def.'s Mot. to Dismiss 4, ECF No. 15 ("Jankovich Resp.").  Alternatively, Jankovich argues that if the court lacks jurisdiction under § 1581(i), its request for reconsideration operated as a de facto protest, satisfying the procedural requirements of § 1581(a).  Id. at 6.  Jankovich also argues that if jurisdiction lies under § 1581(a), the court should apply equitable tolling to afford it a two-year period to request judicial review of the "prospective" ruling "based on the express representations in CBP's Rulings Program that a complaint to contest a prospective ruling must be filed within two years of the issuance of the ruling."  Id. at 6–7.[1]  Finally, Jankovich requests leave to file an amended complaint should the court hold that the Complaint's jurisdictional facts are deficient.  Id. at 8–9.

---

[1] First, it is not clear that the ruling is "prospective" as fees may have already been paid when the binding ruling was made.  It seems clear that fees had been exacted by the time of reconsideration.  Second, CBP's "Rulings Program" is an informal publication "provided for general information purposes only" and suggests that parties obtain advice of counsel.  Decl. of Frank X. Dipolito Re: Def.'s Mot. to Dismiss Ex. E at 3.  The publication is written in a

(continued . . .)

**DISCUSSION**

## I.     Jurisdiction Under 28 U.S.C. § 1581(i)

Generally, jurisdiction under 28 U.S.C. § 1581(i) "may not be invoked when jurisdiction

under another subsection of § 1581 is or could have been available."  Miller & Co. v. United

States, 824 F.2d 961, 963 (Fed. Cir. 1987).  The court has also recognized the "general rule that

litigants must exhaust their administrative remedies under other subsections of § 1581 before

properly invoking § 1581(i) jurisdiction."  NuFarm America's, Inc. v. United States, 29 CIT

1317, 1328, 398 F. Supp. 2d 1338, 1348 (2002).  Where the remedy under another subsection of

§ 1581 would be manifestly inadequate, however, the court does not require exhaustion and

exercises jurisdiction under § 1581(i).  Hartford Fire Ins. Co. v. United States, 544 F.3d 1289,

1292 (Fed. Cir. 2008).  Thus, if Jankovich's claims could have been brought under § 1581(a) and

the remedy would not be manifestly inadequate, the court does not have jurisdiction under

§ 1581(i).

In West Travel, Inc. v. United States, the court analyzed this issue and stated:  "in

Swisher Int[ernationa]l, Inc. v. United States, 205 F.3d 1358, 1365 (Fed. Cir. 2000), the court

recognized an administrative refund procedure [for HMF payments] under 19 C.F.R. § 24.24(e),

the results of which could be protested, leading to § 1581(a) jurisdiction."  30 CIT 594, 595

---

(continued . . .)

shorthand manner such that the two years within which a complaint must be filed challenging a
prospective ruling assumes the court has jurisdiction over the claim.  The publication cites to the
general two-year statute of limitations for aggrieved parties to seek relief in 28 U.S.C. § 2636(i).
Id. at 26–27.  The two-year statute of limitations for challenging prospective rulings is subject to
jurisdictional limits not discussed, such as for prospective rulings regarding imports, the party
must demonstrate irreparable injury.  28 U.S.C. § 1581(h).  Similarly, under 28 U.S.C. § 1581(i),
the other jurisdictional subsections must be manifestly inadequate.  Hartford Fire Ins. Co. v.
United States, 544 F.3d 1289, 1292 (Fed. Cir. 2008).

(2006).  The court also acknowledged that Supreme Court precedent allowed a constitutional

challenge to the HMF statute to proceed under § 1581(i) jurisdiction because the administrative

remedy was futile for constitutional challenges to statutory provisions.  Id. (citing United States

v. U.S. Shoe Corp., 523 U.S. 360, 365–66 (1998) (holding HMF on exports unconstitutional).

The court then determined that plaintiff's statutory claim was "not in the same class of futile

claims," held that "jurisdiction to hear [plaintiff's claims] does not exist under § 1581(i) because

a 28 U.S.C. § 1581(a) remedy was legally and practicably available" by the time of the suit, and

dismissed the action.  Id. at 595–96.  The same is true here.  Jankovich could have requested

refunds through CBP's administrative procedure, protested any adverse decision, and sought

review under § 1581(a).  Review of the refund determination under § 1581(a) also would have

made the separate declaratory relief sought in Jankovich's second cause of action unnecessary.

See 28 U.S.C. § 2643(c)(1) ("[T]he Court of International Trade may . . . order any other form of

relief that is appropriate in a civil action, including, but not limited to, declaratory judgments,

orders of remand, injunctions, and writs of mandamus and prohibition.").  Because 19 C.F.R.

§ 24.24(e) creates a reasonable administrative remedy for pursuing refunds of HMF payments

and ultimately for obtaining a judicial determination of the law pursuant to the court's § 1581(a)

protest denial jurisdiction, the remedy afforded by § 1581(a) is not manifestly inadequate.  As a

sufficient remedy was available under § 1581(a), the court does not have jurisdiction under

§ 1581(i).

## II.     Jurisdiction Under 28 U.S.C. § 1581(a)

Jankovich recognizes it did not meet the time limit to file suit of 180 days from the denial

of its last request for reconsideration, which it asserts is a protest.[2]  It claims an extended period

based on representations of CBP.  See supra note 1.  The court, however, would not have

jurisdiction under 28 U.S.C. § 1581(a) in any case because a request for reconsideration of a

ruling is not a protest.  Section 1581(a) grants the court jurisdiction to review "the denial of a

protest" under the Tariff Act of 1930.  28 U.S.C. § 1581(a).  The relevant portion of the Tariff

Act of 1930 provides that certain decisions made by CBP "shall be final and

conclusive . . . unless a protest is filed."  19 U.S.C. § 1514(a).  Assuming arguendo that CBP's

"prospective" ruling is a decision that may be protested on the facts of this case, Jankovich failed

to properly protest the "prospective" ruling to perfect jurisdiction.

Jankovich concedes that it never requested refunds, or instituted a formal protest before

CBP.  See Jankovich Resp. at 5.  Jankovich asks the court to treat its request for reconsideration

of CBP's "prospective" ruling as a constructive protest and CBP's denial of that request as a

denial of a protest.  See id. at 6.  Although courts have previously construed purported protests

generously, noting the harsh consequences of failing to comply with this jurisdictional

prerequisite, the requirements for a valid protest are mandatory.  See Puerto Rico Towing &

Barge Co. v. United States, Slip Op. 14-80, 2014 WL 3360779, *2–3 (CIT July 10, 2014); see

also Koike Aronson, Inc. v. United States, 165 F.3d 906, 908–09 (Fed. Cir. 1999); Mattel, Inc. v.

United States, 72 Cust. Ct. 257, 261–62, C.D. 4547, 377 F. Supp. 955, 960 (1974).

---

[2] Suit on a protest denial must be filed within 180 days after the mailing of the notice of denial of
a protest or within 180 days of the denial of a protest by operation of law.  28 U.S.C. § 2636(a).

By statute, a protest must set forth distinctly and specifically the decision being protested, the category of merchandise affected by the decision, and the nature of the protesting party's objections. See 19 U.S.C. § 1514(c)(1). Section 1514(c)(1) also requires protests to comply with relevant regulations. Id. By regulation, a protest must be clearly labeled "Protest," identify the party protesting, and list the number and date of the entry, the date of liquidation of the entry or of the decision being protested, a description of the merchandise, and the justifications for the objections. 19 C.F.R. §§ 174.12(b), (c), 174.13(a). Also by regulation, to properly request refund of HMF payments, a party must file CBP Forms 349 and 350. 19 C.F.R. § 24.24(e)(4)(iii).

Whether a purported protest is a valid protest is evaluated by an objective standard, rather than the subjective understanding of the agency. Power-One Inc. v. United States, 23 CIT 959, 964, 83 F. Supp. 2d 1300, 1305 (1999); Mattel, 72 Cust. Ct. at 266, 377 F. Supp. at 963. The purported protestor's intent matters, if at all, only to the extent that the reviewing agency must be able to discern such intent and the relief sought. "[O]ne cardinal rule in construing a protest is that it must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made . . . ." Mattel, 72 Cust. Ct. at 260, 377 F. Supp. at 959. Just as objections later made before a court must have been in the mind of the protestor at the time of the protest, see Mattel, 72 Cust. Ct. at 266, 377 F. Supp. 2d at 963, courts have indicated that the alleged protestor must have intended the submission to be a protest. See Power-One Inc., 23 CIT at 964, 83 F. Supp. 2d at 1306 (holding that a letter containing the statement "[we have not] filed a protest"—a position reaffirmed by counsel at oral argument—was not a

protest).  But see Sony Elecs., Inc. v. United States, 26 CIT 286, 288 (2002) ("Plaintiff's

subjective intent is no more at issue than is Customs' subjective understanding of the protests.").

    Here, Jankovich both failed to comply with the regulations for filing a proper protest and

did not intend for its request for reconsideration to be a protest.  First, the request for

reconsideration was not clearly labeled "Protest" and in fact, never mentioned the word protest.

Courts have dismissed complaints for similar deficiencies.  See, e.g., Ovan Int'l, Ltd. v. United

States, 49 F. Supp. 3d 1327, 1333 (CIT 2015); Chrysal USA, Inc. v. United States, 853 F. Supp.

2d 1314, 1324 (CIT 2012); Ammex, Inc. v. United States, 27 CIT 1677, 1685, 288 F. Supp. 2d

1375, 1382 (2003).  Second, the request for reconsideration did not indicate that Jankovich was

seeking refunds and did not comply with 19 C.F.R. § 24.24(e)(4)(iii).  Jankovich expressly states

it never protested CBP's ruling, Jankovich Resp. at 4–5 ("[Jankovich] is not contesting CBP's

denial of a protest"); id. at 5 ("[a]t no time did [Jankovich] . . . submit a protest under section 515

of the Tariff Act").  Jankovich's request for reconsideration contained no request for refunds,

Dipolito Decl. ¶ 6, yet Jankovich now asks the court to construe its request for reconsideration as

a protest based on 19 C.F.R. § 24.24(e), which concerns refunds.  Jankovich Resp. at 6.  There

was nothing in Jankovich's request that indicated it sought a refund and thus no way for CBP to

know it was initiating a protest of a refund denial.  See Lykes Pasco, Inc. v. United States, 22

CIT 614, 615–16, 14 F. Supp. 2d 748, 749–50 (1998) (dismissing complaint where purported

protest would have required CBP to speculate as to the contents of the protest).  Finally, if all

that is protested is the adverse ruling, courts have indicated that the proper path seeking relief

from a prospective ruling is to protest, ex post, an actual application of that ruling, rather than the

ruling letter itself.  See, e.g., General Mills, Inc. v. United States, 32 F. Supp. 3d 1324, 1330

(CIT 2014) (denying jurisdiction where importer could have obtained relief by filing a protest

upon importation, rather than challenging the prospective ruling).  Indeed, although Jankovich

missed its opportunity here to seek relief as to most of its past payments, by requesting a refund

and protesting upon denial of the refund, such an option for seeking refund of fees remains

available to Jankovich in the future.  It needs to file a protest in proper form if its refund request

is not granted, and file suit upon protest denial.[3]  Accordingly, the court must deny Jankovich's

request for leave to amend its complaint to assert jurisdiction under 28 U.S.C. § 1581(a) because

the prerequisites to such suit have not been met.

## CONCLUSION

As Jankovich's request for reconsideration was not a proper protest, the court does not

have jurisdiction under § 1581(a), and because the court could have had jurisdiction under

§ 1581(a), the court does not have jurisdiction under § 1581(i).  The complaint is dismissed.


Dated: December 30, 2015                                      _____Jane A. Restani_____
       New York, New York                                            Jane A. Restani
                                                                         Judge

---

[3] The court does not imply that such suit would be successful.  CBP's ruling that the exclusion of
bunker fuel from the definition of "commercial cargo" subject to the HMF applies only to such
fuel for the ship's own use is not without some appeal.